**Madeline BOSELY et al., Plaintiffs-Appellants,**

**v.**

**CITY OF EUCLID et al., Defendants-Appellees.**

**No. 73–1608.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 5, 1974.

Decided May 3, 1974.

**194**

Eugene S. Bayer and Thomas Gray, Cleveland, Ohio, for plaintiffs-appellants; Avery Friedman, Cleveland, Ohio, of counsel.

Charles T. Riehl, Walter, Haverfield, Buescher & Chockley, Cleveland, Ohio, for defendants-appellees; Robert M. Debevec, Law Director, City of Euclid, Euclid, Ohio, on brief.

Before PHILLIPS, Chief Judge, LIVELY, Circuit Judge, and McALLISTER, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This is an appeal from an order of the District Court granting summary judgment in this class action for declaratory and injunctive relief and damages in favor of the City of Euclid, its mayor and councilmen (the City). We affirm.

The appellants represent a class composed of the tenants at a municipally-owned, low income housing project known as Briardale. The gravamen of their complaint, filed on April 29, 1971, is a challenge to the constitutionality of a plan of redevelopment for Briardale and ordinances providing for demolition of the housing project.

The litigants stipulated the following facts: Briardale, composed of some 800 rental units, was constructed by the federal government during World War II to provide housing for persons engaged in national defense activities. 42 U.S.C. § 1521. The City purchased this and another project in 1956 for a sum in excess of six million dollars. The City Council at various public meetings since 1967 discussed Briardale's decaying condition and the need to redevelop the project. In 1969 the City filed a proposed plan of redevelopment in the Cuyahoga County Recorder's Office. In 1970 and 1971, the Council passed ordinances providing for the phased demolition of the project.

It was further stipulated that the City Council in 1972 authorized the expenditure of funds to provide moving assistance to needy families displaced by the

demolition and hired a Relocation Coordinator to assist residents in finding suitable housing. In late 1972, all parties were invited to a special Council meeting to discuss the redevelopment of Briardale. The majority of those present indicated a preference for single family homes in the area. The litigants stipulated that the rental income to the City from the Briardale project was insufficient for the City to meet its mortgage and other payments on the property.

## I. Jurisdiction

██ After numerous pre-trial proceedings, on April 24, 1973, District Judge Robert F. Krupansky, considering a motion for summary judgment, entered the order from which this appeal was taken. Judge Krupansky invoked jurisdiction under 28 U.S.C. §§ 1331, 1343(1), (2) and (3), the action being one arising out of alleged violations of 42 U.S.C. §§ 1983, 1985(3) and 1986. Subsequent to the District Court's decision in the present case, the Supreme Court decided City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). In Kenosha, the Court held that the generic word "person" in § 1983 does not include a municipal corporation and, therefore, the District Court in that case erred in invoking § 1343 jurisdiction over a municipal corporation. 412 U.S. at 513. The plaintiffs in Kenosha asserted only a deprivation of § 1983; the appellants herein allege violations of §§ 1983, 1985(3) and 1986. We conclude, however, that this is a meaningless distinction because both §§ 1985(3) and 1986 employ the word "person(s)" and the legislative history that the Supreme Court found applicable to § 1983 is equally applicable to §§ 1985(3) and 1986. Kenosha is thus applicable to the present case.

Unlike Kenosha, the present suit was instituted against both a municipal corporation and its mayor and councilmen in their individual and corporate capacities. The City admits that this court has jurisdiction pursuant to § 1343 to hear the § 1983 et seq. claims against the individual appellees, but asserts that the case should be dismissed as to the municipal corporation. The appellants respond by asserting that the District Court based jurisdiction over the municipal corporation on both § 1331 and § 1343. The District Court's determination of the presence of § 1331 jurisdiction over the municipal corporation has not been challenged on this appeal.

The Supreme Court in Kenosha, id. at 514, after determining there was not § 1343 jurisdiction over the municipal corporation, remanded the case to the District Court for explicit consideration of the presence of § 1331 jurisdiction. We decline to remand the present appeal for two reasons, in addition to the failure of the City to challenge the presence of § 1331 jurisdiction over the municipal corporation: 1) In the present case, unlike in Kenosha, the District Court expressly found § 1331 jurisdiction to be present and based its decision on the merits thereon; 2) even if we should remand the case as to the municipal corporation, we still would reach the merits of the case as to the individual appellees, against whom relief is sought. Furthermore, we conclude for reasons set forth below that appellants' claims on the merits are baseless.

## II. Motion for Summary Judgment

██ After invoking jurisdiction, the District Court determined that no genuine issue existed as to a material fact and accordingly entered summary judgment for the City. Rule 56, Fed.R.Civ. P. The City earlier had defended on the dual grounds of lack of subject matter jurisdiction, Rule 12(b)(1), Fed.R.Civ. P., and failure to state a claim on which relief could be granted, Rule 12(b)(6), Fed.R.Civ.P. The appellants complain that the District Court improperly treated the City's Rule 12(b)(1) motion to dismiss as one for summary judgment in view of the Rule 12(b) declaration that only Rule 12(b)(6) motions can be treated as motions for summary judgment.

We are unpersuaded by this contention. In treating the City's motion as one for summary judgment, the District Court referred specifically to Rule 12(b)(6). We, therefore, conclude that the District Court properly treated the City's Rule 12(b)(6) motion as one for summary judgment. Rule 12(b), Fed. R.Civ.P.

### III. Mootness

■ Subsequent to the decision of the District Court, the City instituted eviction actions in Euclid Municipal Court against approximately 31 families remaining in Briardale. A judge of that court issued writs of execution evicting the remaining families if they had not left voluntarily by August 15, 1973. Shortly after the last remaining tenants departed Briardale, the last few remaining structures were demolished.

These occurrences subsequent to the District Court's decision provide the basis for a further threshold question for this court: Is the case now moot? The City asserts that since Briardale has been demolished and all its residents relocated, no issue remains to be considered on this appeal. The passage of time obviously has stripped this court and the District Court of power to enjoin either demolition of Briardale or eviction of its residents. On the other hand, if the challenged ordinances and plan of redevelopment are declared to have violated the appellants' constitutional rights, there would remain the issues of damages and incidental relief.

We, therefore, decline to dismiss this appeal as moot. See Ramsburg v. American Investment Company of Illinois, 231 F.2d 333, 336 (7th Cir. 1956), and authorities therein cited.

### IV. Procedural Due Process

■ The appellants' basic claim on appeal is that they were denied due process in the City's decision to redevelop Briardale. It is acknowledged that there is no constitutional assurance to adequate housing, Lindsey v. Normet,

405 U.S. 56, 74, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). Appellants assert, however, that the summary termination of the municipal service of low cost housing in the absence of due process safeguards violated their constitutional rights. We find no merit in this contention.

■ The appellants have failed to demonstrate a "legitimate claim of entitlement" to the service provided by the City. Board of Regents v. Roth, 408 U. S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The record reveals that counsel for the appellants stated orally to the District Court that the City had "since 1938 recognized the need for the low cost housing of the type involved in the Briardale development." Nevertheless, no proof, outside of the City's purchase in 1956 of Briardale and another project, was proffered by the appellants in support of this statement. Further, in view of the fifteen day cancellation clause in the appellants' month-to-month leases, we can only conclude that the appellants' desire to continue residing in Briardale is no more than a "unilateral expectation." Roth, Id.

The stipulated facts demonstrate not only that the City received the input of the appellants in deciding to redevelop Briardale but also that the City was diligent in assisting in the relocation of Briardale residents. All Council meetings at which redevelopment was discussed were held in public and one special meeting was conducted to receive the input of all interested parties. A full-time Relocation Coordinator was employed to assist residents find suitable housing and funds were expended to provide moving assistance to needy families. Most importantly, for those low income residents, housing was found in another municipally-owned low cost housing project.

We, therefore, hold that the appellants were not denied due process in the City's decision to redevelop Briardale.

### V. Summary Judgment

We come finally to the question of whether the District Court erred in

granting summary judgment in favor of the City. 10 Wright & Miller, Federal Practice and Procedure, § 2716 at 430–32 (1973 ed.) states the standard to employ in considering a motion for summary judgment:

> "The message is clear; the party who defended against the motion for summary judgment will have the advantage of the court's reading the record in the light most favorable to him, will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant. (Citations omitted.)

See also United States v. Diebold, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), and Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962).

■ The appellants assert that if only the court would hear their "true life story" it would reveal how they have been "pushed around and mistreated" and would indicate a "tremendous gap in human relations" on the part of the City. We have examined the record in detail and, considering the extent of the factual stipulations, conclude that no genuine issue exists as to a fact material to the issue of due process deprivations. In Appolonio v. Baxter, 217 F.2d 267, 271 (1954), this court stated that the "assertion in affidavits of the appellants that at the trial the claimants *may* produce further evidence does not preclude the granting of summary judgment." (Emphasis supplied.) See also Legerlotz v. Rogers, 105 U.S.App.D.C. 266, 266 F.2d 457, cert. granted, 361 U.S. 808, 80 S.Ct. 76, 4 L.Ed.2d 57, cert. dismissed, 362 U.S. 938, 80 S.Ct. 803, 4 L.Ed.2d 768 (1959), wherein the court affirmed a summary judgment on the ground that the alleged issue of fact was essentially frivolous and not worthy of the court's consideration.

Accordingly, we hold that the District Court correctly entered summary judgment in favor of the City.

Affirmed.