NEWBURY LOCAL SCHOOL DIS-
TRICT BOARD OF EDUCATION,
et al., Plaintiffs,

v.

GEAUGA COUNTY METROPOLITAN
HOUSING AUTHORITY, et al.,
Defendants.

CARDINAL LOCAL SCHOOL DIS-
TRICT BOARD OF EDUCATION,
et al., Plaintiffs,

v.

GEAUGA COUNTY METROPOLITAN
HOUSING AUTHORITY, et al.,
Defendants.

Civ. A. Nos. C82–577, C82–578.

United States District Court,
N.D. Ohio, E.D.

Dec. 22, 1982.

David J. Eardley, Richard C. Woollams, Jr., Eardley & Wantz, Chardon, Ohio, Francis X. Reddy, Garfield Heights, Ohio, Michael T. Gavin, Eli Manos, Mansour, Gavin, Gerlack & Manos, Cleveland, Ohio, J. Melvin Andrews, Eastlake, Ohio, for plaintiffs.

Norman R. Fisher, Jr., Hendershott, Huffman & Peckinpaugh Co., L.P.A., Cleveland, Ohio, John E. Redeker, Sperry, Hassett & Redeker Co., L.P.A., Chardon, Ohio, Marcia W. Johnson, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

KRUPANSKY, Circuit Judge, Sitting by Designation.

These consolidated actions challenge the legality of two low income housing projects planned by the defendant housing authority and county government and subsidized with loans from the Department of Housing and Urban Development. The lawsuits were instituted on February 12, 1982 in the Geauga County (Ohio) Court of Common Pleas and thereafter, on March 8, 1982, timely removed to this court pursuant to 28

U.S.C. sections 1331 and 1442, for interpretation of certain federal statutes.

The plaintiffs in number C82–577 are the Newbury Local School District Board of Education (Newbury School Board), the Newbury Township Board of Trustees (Newbury Trustees) and Rodger Paine.

In case number C82–578 the plaintiffs are the Cardinal Local School District Board of Education (Cardinal School Board), Mulanoottil P. George and Denise J. George.

The Geauga County Metropolitan Housing Authority (Housing Authority) and the Geauga County Board of Commissioners (County Commissioners) are defendants to both actions. The United States Department of Housing and Urban Development (HUD) has been joined as defendant in number C82–577.

On June 28, 1982, upon the unopposed motion of the plaintiffs in number C82–578, this Court determined the commonality of issues presented by the respective actions and ordered the consolidation of number C82–578 with number C82–577.[1]

On November 16, 1982 Newbury School Board moved the Court to issue a temporary restraining order enjoining construction of the project, which it believed was imminent. A duly noticed hearing was conducted on November 29, 1982 at which all litigants conceded that the only issue before the Court was an interpretation of the term "local governing body" as used in the relevant statute.

Currently before the Court are separate motions by the defendants Housing Authority and County Commissioners for summary judgment in both actions, and the joint motion of the plaintiffs in number C82–577, Newbury Schools and Rodger Paine, for summary judgment against the Housing Authority, County Commissioners and HUD. Further, HUD has submitted to the Court a motion to dismiss which challenges the jurisdictional authority of this

Court and which moves for dismissal upon the merits.

The threshold issue joined by HUD's challenging of the court's jurisdiction may be dispositive of all remaining motions. Since Title 28 section 1331 vests this Court with jurisdiction to adjudicate lawsuits which require, as in the instant proceedings, the construction of federal statutes, HUD's motion to dismiss for failure of the Complaint to set forth the basis of jurisdiction is not well-founded and must be denied. *See Phillips Petroleum Company v. Texaco, Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974) (per curiam).

In it's motion to dismiss HUD alternatively argues to dismiss upon the merits, *Motion to Dismiss*, at 9, and supplements the motion with copies of documents from HUD files relating to these projects. The parties have responded to HUD's motion, which is treated as one for summary judgment pursuant to Federal Rule of Civil Procedure 12(b). *Bosely v. City of Euclid*, 496 F.2d 193, 195 (6th Cir.1974).

The impetus for these actions was a Cooperation Agreement executed February 15, 1981 by the Housing Authority and the County of Geauga through its Commissioners. The provocative item of the Agreement is paragraph two which states:

2. The Local Authority shall endeavor (a) to secure a contract or contracts with the Government for loans and annual contributions covering one or more Projects comprising approximately 180 units of low-rent housing, and (b) to develop or acquire and administer such Project or Projects, each of which shall be located within the unincorporated limits of a Township. The obligations of the parties hereto shall apply to each Project.

Pursuant to this Agreement, the defendants are about to commence the construction of federally subsidized low income housing projects in Newbury and Middlefield Townships. The gravaman of the

---

**1.** Accordingly, the merits of the matter will hereinafter be discussed as though one lawsuit were pending before the Court.

Complaints is that the defendant Housing Authority and the defendant County Commissioners improperly applied to HUD for project funding. The plaintiffs assert that federal statutes mandate that the defendant Housing Authority negotiate a cooperation agreement directly with the taxing authorities of the townships involved, specifically the Newbury Trustees, Newbury School Board and Cardinal School Board, as a predicate to the HUD application. The language of the respective Complaints is substantively identical; the amended Complaint in No. C82–577 states the plaintiffs' proposition thusly:

> 11. For such an application to be lawful, it must include an Agreement providing for the cooperation of the Township Trustees and the Board of Education, within whose boundaries the project is located, pursuant to Title 42 United States Code Section 1437(c)[*sic*](e)(2).

HUD regulations require that lower income housing projects be provided an exemption from local property taxes. 24 C.F.R. § 841.201(c), n. 3 *infra*. All plaintiffs claim exclusive authority to waive payment of taxes through the medium of a cooperation agreement. Therefore, the plaintiffs allege, the housing projects currently planned are unlawful because the plaintiffs have not consented to tax exemption for the real estate concerned.

As determined at the hearing, the narrow legal issue presented herein is the definition of the term "governing body of the locality involved," as utilized in 42 U.S.C. section 1437c(e)(2).

The drafting of section 1437c(e) to include a requisite cooperation agreement reflects a two-fold congressional intent.

First, as stated in the preambulatory passage of 42 U.S.C. section 1437c(e), Congress sought to ensure a locally based determination of the need for low income housing.[2] Second, Congress desired to secure the local cooperation required by the Secretary of HUD, to wit: exemption from taxation, acceptance of rental payments in lieu of taxes and the furnishing of public services to the project at a cost no greater than that at which public services and facilities are furnished to others in the community. 24 C.F.R. § 841.201(c).[3] *See also* S.Rep. No. 93–693, 93d Cong., 2d. Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News 4273, 4387. However, the statute itself does not explicitly define "governing body of the locality involved," and the legislative history is silent as to the meaning intended for the phrase at issue.

Where the statutory language is imprecise and the legislative history is not enlightening, the courts will apply the "venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *Red Lion Broadcasting Inc. v. Federal Communications Commission*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *e.g. Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 122, 93 S.Ct. 2080, 2096, 36 L.Ed.2d 772 (1973); *Zemel v. Rusk*, 381 U.S. 1, 11–12, 85 S.Ct. 1271, 1278–79, 14 L.Ed.2d 179 (1965). Herein HUD has determined the Housing Authority eligible for the funds and has accepted the Cooperation Agreement between the Housing Authority and the Commissioners as fulfillment of the statutory require-

---

**2.** The prefactory language of § 1437c(e) declares:

In recognition that there should be *local determination of the need for lower income housing* to meet needs not being adequately met by private enterprise—. [Emphasis supplied].

**3.** 24 C.F.R. § 841.201(c) states:

(c) Local Cooperation. The PHA [Public Housing Agency] must provide a co-operation agreement between the PHA and the applicable local governing body for the area in which the public housing project is to be located as *evidence that the local governing body will provide the local cooperation required by HUD* pursuant to the Act. This local cooperation shall include exemption from real and personal property taxes, acceptance of PHA payments in lieu of taxes, and the provision at no cost or at no greater cost by the local governing body of the same public services and facilities normally furnished to others in the community. [Emphasis added].

ments.[4] The agency has thus evidenced an interpretation of the statute which permits the governing authority of a county to execute the cooperation agreement.

Pursuant to the standard enunciated by the Supreme Court in the *Red Lion* case, further inquiry is required to determine the propriety of the agency's reasoning. In order to establish the existence of compelling indicia of error in the interpretation proffered by HUD, the agency's analysis must be evaluated with regard to the policies expressed by Congress in adopting the local approval provisions of the Act. *Cf. Columbia Broadcasting System, Inc. v. Democratic National Committee,* 412 U.S. 94, 121–22, 93 S.Ct. 2080, 2096, 36 L.Ed.2d 772 (1973) ["Whether there are 'compelling indications' of error ... must be answered by a careful evaluation of the Commission's reasoning in light of the policies embodied by Congress in the 'public interest' standard of the Act."]

As hereinabove delineated, 42 U.S.C. section 1437c(e) gives effect to dual policy considerations, briefly restated these are: 1) determination of need by a local entity; and 2) satisfaction of the Secretary's local cooperation requirements. The County Commissioners are locally-based and qualified to determine county requirements. The plaintiffs do not argue the contrary. Rather, the plaintiffs urge that the Commissioners lack authority to assure the waiver of township and school district taxes upon the project property and to pledge the services at a cost no greater than that at which they are provided others in the community.

The state of Ohio exempts a low income housing project from all taxation, Ohio Rev.Code section 3735.34;[5] the state code also provides for the acceptance of annual payments in lieu of taxes, Ohio Rev.Code section 3735.35;[6] finally, the state legislature requires that the local governments provide "improvements, services, and facilities ... for the benefit of said housing project, [and] in no event shall the [cost to the project] exceed the estimated cost to the [local government] of the improvements, services, or facilities to be furnished," Ohio Rev.Code section 3735.53.

Moreover, under State law the governing body of a county is specifically empowered to enter into agreements with a housing authority to obtain federal loans for low income housing projects, Ohio Rev.Code section 3735.52(E), and to "[d]o all things necessary or convenient to aid and co-operate in the planning, undertaking, construction, or operation of such housing project," Ohio Rev.Code sections 3735.52(F), 3735.55.

Thus the state of Ohio has statutorily delegated to the County Commissioners the authority to negotiate and execute the Cooperation Agreement challenged by the plaintiffs. The State has further mandated that, upon acceptance of the application by HUD, the localities involved *must* provide the "local cooperation required by HUD pursuant to the Act." O.R.C. §§ 3735.34, 3735.35, 3735.53. *See also* 24 C.F.R. sec-

---

4. *See* 24 C.F.R. § 841.201(a), (b) which state:
   (a) *General.* In order to participate in the public housing program, a PHA must be approved as an eligible PHA. The field office will determine eligibility based on a showing that the PHA has the legal authority and local cooperation required by this part.
   (b) *Legal Authority.* The PHA must demonstrate that it has the legal authority to develop, own, and operate a public housing project under the Act.

5. O.R.C. § 3735.34 states in pertinent part:
   All property, both real and personal, acquired or owned by a metropolitan housing authority and used for the purposes of exercising the powers set forth in [the Metropolitan Housing Authority statutes] shall be public property used exclusively for a public purpose ... and shall be tax exempt.

6. O.R.C. § 3735.35 states in relevant portion:
   With respect to property, both real and personal, owned or acquired by a metropolitan housing authority for the purpose of exercising the powers set forth in [the Metropolitan Housing Authority statutes], such authority shall make annual payments to the county treasurer for distribution in the maximum amounts consistent with obtaining federal assistance under the "United States Housing Act of 1937" ... to the taxing subdivisions levying taxes in the subdivision in which the property is located, in the same proportions in which the current general property tax is distributed.

tion 841.201(c). Therefore, HUD's interpretation of 42 U.S.C. section 1437c(e), which favors acceptance of cooperation agreements executed by county governments, is not clearly erroneous inasmuch as the policies and substantive requisites of the Act are satisfied, and not undermined, by such interpretation.

■ This result also comports with a common sense understanding of the Act. As both sides urged at the November 29 hearing, the Act was drafted by Congress for implementation in every state in the Union. Accordingly, the Act was of necessity made sufficiently flexible to permit its applicability to the plethora of local governmental forms. Pursuant to the principles of federalism, each state determines for itself the character and authority of the municipal governments within its borders. Through its legislature, the state of Ohio has, with regard to the United States Housing Act of 1937 as amended, elected the option of permitting the county government to execute the cooperation agreement required by the Act and regulations promulgated thereunder. The State did not intend the affected taxing authorities to reserve a veto power over the decision of the county government. Therefore, the allegation of the Complaints, to wit:

> It is the duty of the Newbury Trustees and the Newbury School Board to decide for themselves and their constituents whether or not they want to waive any real estate tax revenue from the project and instead accept the promised payments in lieu of taxes,

evidences a misunderstanding of the respective roles accorded the political subdivisions of the state of Ohio. The State has, consistent with its authority to delegate the exercise of its health, safety, welfare and police powers, made the election hereinabove described; this Court is constrained by the principles of federalism to accept, and give effect to the proper exercise of that power. *Mayor of the City of Philadelphia v. Educational Equality League,* 415 U.S. 605, 615 n. 13, 94 S.Ct. 1323, 1330 n. 13, 39 L.Ed.2d 630 (1974).

The Newbury School Board has produced and relies upon evidence concerning the relative distribution of real estate taxes collected in Newbury Township; in 1981 the Newbury School Board and Township together received 88 per cent of the taxes collected, as against 12 per cent for the county. Thus, Newbury School Board asserts, "[t]he project will have a far greater impact upon the School Board in assimilating pupils and upon the Township in providing services than it will upon Geauga County." *Motion of Newbury School District Board of Education and Rodger Paine for Summary Judgment,* Dec. 13, 1982, at 5. Because the impact is greater on the plaintiffs, Newbury School Board contends, they are more "significant local governing bod[ies]" than the County Commissioners. Due to the relative impact, Newbury School Board argues, it is the plaintiffs' prerogative to execute the required cooperation agreement and not the County's.

The Newbury School Board cites no authority to support it's theory that an impact analysis is appropriate to determine which local entity in a particular instance is the proper governing body intended by congress to be the authority competent to execute the agreement. The School Board does produce evidence that HUD recognizes the possibility of a situation wherein more than one local entity would be required to execute a cooperation agreement. Such a conception does not conflict with this Court's understanding of the statute. Neither does it alter the conclusion reached above that the congressional intentions manifested by the requirement of local cooperation are satisfied in the circumstances of this case.

The Newbury School Board asserts that the state of Ohio is the only authority competent to exempt an institution from taxes and that,

> [i]n spite of the fact that exemption from taxation rests with the state, Congress mandated and HUD regulations require cooperation agreements with local governing bodies. Although these bodies do not have the power to exempt from taxa-

tion, it is they which are most affected by the exemption and which are required to provide the services. Therefore, HUD regulations require that they be consulted before a low-income housing project is approved.

*Id.* at 6. The Newbury School Board's theory fails to address the proper congressional concerns. In formulating the Act congress expressly recognized the desirability of having a local entity, familiar with the unique requirements and situation of the area involved, conclude the initial determination of the need for lower income housing. The county government is manifestly competent to evaluate the requisites of the area to determine the nature and extent of low income housing requirements within its jurisdiction. Further, there is no evidence in the statutory language, the congressional history, or the regulatory framework that the requirement of an agreement to waive local taxes reflects a congressional intent that all entities impacted upon by the project be permitted to approve or veto the projects. The clear import of the exemption requirement is to reduce the burdens upon the lower income housing development.[7]

On December 6, 1982 the plaintiff Newbury Trustees filed with the Court a memorandum that asserts the existence of a disputed issue of fact which the Newbury Trustees contend precludes the summary adjudication of this proceeding. *Memorandum in Opposition*, Dec. 6, 1982. The Trustees thereby espouse a position contradictory of their representation, proffered at a November 29, 1982 hearing before the Court, that no relevant fact was at issue. Nevertheless, the Court has considered the Trustees new theory and finds it without merit.

The Trustees state:

Herein lies disagreement as to a material fact. GMHA says the [Trustee's] Resolution of 1969 is a cooperation agreement. The township Trustees say it is a resolution welcoming the creation of a public housing authority.

*Id.* at 6. The characterization of the 1969 Resolution is irrelevant to this Court's resolution. Assuming *arguendo* the existence of a dispute, and resolution of the factual issue in favor of the Trustees, the outcome is unaffected because this Court's holding rejects the necessity of any action by the Township Trustees upon the HUD application. Accordingly the asserted factual dispute is not material and therefore does not present a bar to the summary resolution of this action.

On December 13, 1982 HUD moved the Court to,

strike the pleading of Cardinal Local School District Board of Education, et al., in Support of Motion and Complaint for Temporary and Permanent Injunctive Relief and those portions of plaintiff Newbury Township Board of Trustees [sic] Briefs and Memoranda on behalf of Cardinal Local School District Board of Education, et al. as they pertain to the Department of Housing and Urban Development.

The parties to this litigation have apparently proceeded under an assumption that HUD has been joined as defendant to both actions. The record evidences, however, that it has been joined only in case number 82–577. Accordingly, HUD's objection on

---

7. The record contains a letter written by the Superintendent of the Newbury Local Schools on October 26, 1981 which suggests that the burden upon the Newbury Schools in assimilating pupils is not as severe as counsel have claimed. The letter, submitted by HUD in support of its motion to dismiss, states, in full:

The enrollment of our school district has been declining for the past several years, and we believe that the present decline is going to continue until the national economic problems are resolved.

We, therefore, feel that we will be able to easily accommodate an additional 152 more students.

At the November 29, 1982 hearing counsel for the Newbury School Board estimated that the proposed project would result in the enrollment of 150 new students. Thus it appears that the school district can "easily accommodate" and assimilate the new students.

this point is well-taken and the instant motion is hereby granted.

Consistent with the foregoing, inasmuch as there exists no disputed issue of material fact and the defendants have demonstrated that they are entitled to judgment as a matter of law, it is adjudged that the Geauga County Metropolitan Housing Authority, the Geauga County Board of Commissioners, and the Department of Housing and Urban Development are entitled to, and are hereby granted, summary judgment in civil action number C82–577. It is further adjudged that the defendants' motion for summary judgment in number C82–578 must be also granted.

Consistent with the foregoing, Newbury School Board's motion for a temporary restraining order and Newbury Township's motion for a preliminary injunction must be and hereby are denied. The remaining motions are mooted by virtue of the within disposition upon the merits.

Each party shall bear their own costs.

IT IS SO ORDERED.