GENCORP, INC., Plaintiff,

v.

AIU INSURANCE COMPANY,
et al., Defendants,

American Re–Insurance Company,
et al., Third–Party Plaintiffs,

v.

American Insurance Company, et
al., Third–Party Defendants.

No. 1:02CV1770.

United States District Court,
N.D. Ohio,
Eastern Division.

Oct. 15, 2003.

Thomas W. Ladd, McCarter & English, Newark, NJ, for GenCorp Inc., Plaintiff.

Michael D. Almassian, Bloomfield Hills, MI, Robert D. Anderle, Porter, Wright, Morris & Arthur, Cleveland, John S. Anooshian, White and Williams, Philadephia, PA, Michael J. Baughman, Cohn & Baughman, Chicago, IL, Amelia A. Bower, Plunkett & Cooney, Columbus, OH, Stephen P. Brown, Plunkett & Cooney, Bloomfield Hills, MI, Charles W. Browning, Plunkett & Cooney, Bloomfield Hills, MI, Elizabeth Canapary, White and Williams, LLP, Philadelphia, PA, Amy C. Clauss, Melito & Adolfsen, New York City, Michael P. Comiskey, Lord, Bissell & Brook, Chicago, IL, John D. Dalton, Merlo, Kanofsky & Brinkmeier, Chicago, IL, Jerome J. Duchowicz, O'Hagan, Smith & Amundsen, Chicago, IL, Donald E. Elder, Merlo, Kanofsky & Brinkmeier, Chicago, IL, Maria G. Enriquez, Bates & Carey, Chicago, IL, David J. Fagnilli, Davis & Young, Cleveland, OH, Alexander H. Gillespie, Bonner, Kiernan, Trebach & Crociata, Washington, DC, Daniel F. Gourash, Porter, Wright, Morris & Arthur, Cleveland, OH, Michael R. Gregg, Merlo, Kanofsky & Brinkmeir, Chicago, IL, Gregory A. Harrison, Dinsmore & Shohl, Cincinnati, OH, Steven G. Janik, Janik & Dorman, Cleveland, OH, Gary W. Johnson, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, John D. LaBarbera, O'Hagan, Smith & Amundensen, Chicago, IL, David L. Lester, Ulmer & Berne, Cleveland, OH, Susan M. Luken, Dinsmore & Shohl, Cincinnati, OH, John F. Myers, Holland Myers & Myers, Akron, OH, Margaret J. Orbon, Clausen Miller, Chicago, IL, Christopher J. Raistrick, Merlo, Kanofsky & Brinkmeier, Ltd., Chicago, IL, Patricia B. Santelle, White and Williams, LLP, Philadelphia, PA, David A. Schaefer, McCarthy, Lebit, Crystal & Haiman, Cleveland, OH, Gordon K. Walton, Clausen Miller, Chicago, IL, Gerald V. Weigle, Jr., Dinsmore & Shohl, Cincinnati, OH, John C. Weisensell, Amer Cunningham, Akron, OH, Ellen J. Zabinski, Bates & Carey, Chicago, IL, for Defendants.

## MEMORANDUM OPINION

HEMANN, United States Magistrate Judge.

This case is before the magistrate judge on consent. Pending is the motion for summary judgment ("Def. mot."; Docket # 99) of defendants AIU Insurance Company ("AIU"); American Home Assurance Company ("American Home"); American Re–Insurance Co. ("American Re"); Federal Insurance Co. ("Federal"); Mt. McKinley Insurance Company

("Mt.McKinley");[1] Century Indemnity Company ("Century");[2] Lexington Insurance Company ("Lexington"); Lumbermans Mutual Casualty Company ("Lumbermans"); Everest Re–Insurance Company ("Everest");[3] St. Paul Fire & Marine Insurance Co. ("St.Paul"); and Twin City Fire Insurance Company ("Twin City"). Plaintiff, GenCorp, Inc. ("GenCorp"), opposes this motion ("Pl. opp."; Docket # 109). Also pending before the court is the motion of defendant First State Insurance Company ("First State") to join the other defendants' motion for summary judgment (Docket # 111). The court grants First State's motion for joinder. For the reasons given below, the court also grants defendants' motion for summary judgment.

## I

GenCorp, formerly known as General Tire and Rubber Co., manufactures, sells, and distributes automotive, latex, and polymer products. Defendants are insurers from whom GenCorp purchased excess liability insurance policies.

The United States Environmental Protection Agency ("USEPA") and certain state and local agencies have identified GenCorp as a potentially responsible party at a number of sites in the northeastern United States. The USEPA has notified GenCorp that GenCorp is considered a potentially responsible party for alleged contamination at the Organic Chemical, Inc. site in Grandville, Michigan; the Old Southington Landfill and the Solvents Recovery Service of New England, Inc. site ("SRSNE"), both in Southington, Connecticut; and the Stickney/Tyler Road Landfill near Toledo, Ohio. The USEPA has already ordered GenCorp to pay for remediation at the Organic Chemical site. In May 1993 the town of Londonderry, New Hampshire named GenCorp as a third-party defendant in a suit seeking recovery of costs incurred in remediating the Auburn Road Landfill in Londonderry. On May 9, 2002 GenCorp was found liable to Olin Corporation for costs related to the cleanup of the Big D Campground in North Kingville, Ohio. Defendants cite Judge David Dowd's Memorandum Opinion of September 8, 2000 ("Sept.Memo.") in *GenCorp, Inc. v. AIU Insurance Co., et al.*, No. 5:95CV2464 (N.D.Ohio Sept. 8, 2000), pp. 8–9, 13 ("GenCorp I"),[4] for the assertions that GenCorp dumped hazardous material at the Organic Chemical site from 1972 to 1982, at the Old Southington site from 1955 to 1967, at the SRSNE site from 1955–1971 and 1981–82, at the Stickney/Tyler site from 1954 to 1965, at the Auburn Road site from 1964 to 1980, and at the Big D site from at least 1964 to 1978.[5]

GenCorp has actual and potential liability, therefore, for environmental clean-up costs at six sites. Defendants allege that GenCorp's liability for clean-up at these sites is as follows:

$416,000 in past and future costs at the Organic Chemical site; $930,000 in past and future costs at the Old Southington

1. Mt. McKinley is the successor of Gibraltar Casualty Company.

2. Century is the successor to CCI Insurance Co., which was successor to the Insurance Co. of North America.

3. Everest is successor to Prudential Re–Insurance Company.

4. The instant case was assigned to Judge Dowd prior to the parties' consent to the magistrate judge.

5. The court based its estimates of when GenCorp dumped hazardous material at the various sites on the testimony of GenCorp's own expert.

Landfill site; $2,400,000 in future costs at the SRSNE site; $1,500,000 in past and future costs at the Stickney/Tyler Landfill site; $200,000 in past and future costs at the Auburn Road Landfill site, and; [sic] $28,711,517.76 in total costs related to the Big D Campground site

. . . .

Def. mot. at 3 (footnote omitted). GenCorp also claims that it has spent and continues to spend substantial sums of money in defending itself against environmental claims arising from conditions at the six sites.

GenCorp had secured primary, umbrella, and excess insurance policies to protect it from liability arising from environmental claims. GenCorp had primary and/or umbrella insurance coverage from Liberty Mutual Assurance Company ("Liberty"), American Insurance Company ("American"), Continental Casualty Company ("Continental"), and Genco Insurance, Ltd. ("Genco"). Defendants allege that GenCorp's primary and umbrella insurance coverage from 1960 to 1982 totaled at least $64 million:

$4 million total under the American policies for the years 1960 to 1966; $5 million total under the Liberty policies for the years 1966 to 1970; $22 million total under the Continental policies for the years 1960 to 1975 and $37 million total under the Genco policies for the years 1975 to 1982.

*Id.* (footnote omitted).

GenCorp's claims are raised for the second time in the Northern District of Ohio. On November 22, 1995 GenCorp filed GenCorp I against the defendants named here and against other insurance companies, seeking payment and indemnification for GenCorp's liability and defense costs resulting from pending environmental claims. On June 6, 1997 Judge Dowd dismissed some of GenCorp's claims against its excess insurance carriers. The court found that the primary policies underlying the excess insurance policies had been modified to grant exclusions for environmental pollution and that the excess insurance policies "followed form" as to those exclusionary provisions.

Two of GenCorp's primary insurers, Continental and American, settled with GenCorp for undisclosed amounts in July 1997 and April 1999 respectively. Confidentiality agreements prevent disclosure of the terms of these settlements. GenCorp dismissed its claims as to Continental and American and agreed that they had no further obligations to GenCorp under the policies at issue in GenCorp I.

On October 20, 1999 Judge Dowd granted certain defendants' motions for summary judgment in whole or in part. The court found *inter alia* that there was no practical likelihood that GenCorp would incur the $11,000,000 in liability in a single policy year on the environmental claims sufficient to trigger the excess coverage represented by some of its secondary insurance policies. The claims dismissed as unripe on October 20, 1999 included claims against defendants AIU (policy # 75–100033), American Re (policy ## M0088550, H6665–2001), Century (policy ## XCP 145008, XBC 151504), Federal (policy ## 7922007, 7922008), Prudential (policy # DXC DX 0645), and St. Paul (policy # 543XA6052).

On November 29, 2000 GenCorp's remaining primary insurer, Liberty, settled with GenCorp. A confidentiality agreement prevents disclosure of the terms of this settlement. GenCorp dismissed its claims as to Liberty and agreed that Liberty had no further obligations to GenCorp under the policies at issue in GenCorp I.

On March 30, 2001 Judge Dowd dismissed without prejudice GenCorp's claims

against the remaining excess insurers. Relying on the decision in *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.,* 210 F.3d 672 (6th Cir.2000), the court found it unlikely that GenCorp would incur sufficient liability in a single year on the environmental claims to trigger the coverage provided by any of the remaining secondary insurers.

On June 26, 2002, the Ohio Supreme Court decided *Goodyear Tire & Rubber Co. v. Aetna Cas. & Surety Co.,* 95 Ohio St.3d 512, 769 N.E.2d 835 (2002), a case which contradicted the holding in *Lincoln Electric.* GenCorp filed the instant action on September 9, 2002. GenCorp contends that in light of *Goodyear* the calculations which the court used in GenCorp I in dismissing without prejudice the claims originally brought against the excess insurers are no longer valid. GenCorp argues that it might incur in any year sufficient liability to trigger any remaining secondary insurance policy. GenCorp alleges, therefore, that the defendants breached their insurance contracts by failing to reimburse and indemnify GenCorp for its liability for environmental clean-up at the six sites and for its costs of defending itself against the environmental claims filed against GenCorp. GenCorp seeks a declaratory judgment that the defendants must indemnify GenCorp against all past, present, and future costs of defending itself against the environmental claims. GenCorp also asks the court to enjoin defendants from refusing to indemnify GenCorp for the liability costs arising from the environmental claims and to require defendants to reimburse GenCorp for the costs of defending itself against the environmental claims. Finally, GenCorp seeks damages resulting from the alleged breach or anticipatory breach of the defendants' insurance contracts.

On March 12, 2003 defendants American Re, Century, and Federal filed a third-party complaint against GenCorp's primary insurers, American, Liberty, and Continental. The third-party plaintiffs asked the court to require the third-party defendants to indemnify the third-party plaintiffs for any liability incurred as a result of GenCorp's actions, including the third-party plaintiffs' costs of defense, and to award the third-party plaintiffs the costs associated with their actions against the third-party defendants. Liberty moved for summary judgment on the claims in the third-party complaint; American, Continental, and GenCorp joined in Liberty's motion. On July 23, 2003 this court granted Liberty's motion and dismissed Liberty, American, and Continental from the case. In rendering its decision the court found:

> GenCorp's settlement with its primary insurers extinguished all claims related to the issues in dispute in GenCorp I that GenCorp had against its primary insurers. That settlement also exhausted GenCorp's primary insurance for purposes of making claims under its excess insurance. GenCorp's excess insurers have the same obligation to pay Gen-Corp's environmental-related liabilities as they would have had if GenCorp's primary insurers had paid GenCorp the maximum amount covered by GenCorp's primary insurance policies.

> Because GenCorp's settlement with its primary insurers extinguished all of GenCorp's claims against them as to the issues in dispute in GenCorp I, the third-party plaintiffs in this litigation have no legal basis for asserting that the third-party defendants are "responsible" parties from whom the third-party plaintiffs may seek contribution. The third-party complaint, therefore, is without merit.

Memorandum of Opinion, July 23, 2003 ("July Memo."; Docket # 95), pp. 9–10.

The defendant insurers now move for summary judgment as to GenCorp's claims against them. GenCorp opposes the motion.

## II

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The nonmoving party must then show the existence of a material fact which must be tried. *Id.* at 324, 106 S.Ct. 2548.

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to ... the party opposing the motion ...." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 12 Ohio Misc. 230, 369 F.2d 648 (6th Cir.1966). This includes taking the nonmoving party's uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir.1974).

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party must oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves...." *Id.* A scintilla of evidence in favor of the nonmoving party is not sufficient. There must be enough evidence that a reasonable jury could find for the nonmoving party. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989).

## III

Defendants argue that they are entitled to a credit for any settlements which GenCorp reached with its primary and excess insurers. That credit, they contend, must be in the full amount of all policy coverage available under the agreements with the underlying insurers. They further contend that because the combined limits of GenCorp's settled primary and secondary policies far exceed GenCorp's liability for any one of the occurrences of environmental damage at issue in this case, none of GenCorp's remaining excess insurance policies can be triggered. Defendants conclude, therefore, that they are not obligated to indemnify GenCorp for any losses due to environmental damage at the identified six sites. The defendants ask for summary judgment as to their liability to GenCorp.

GenCorp replies that the court should not grant summary judgment because (1) this would violate Ohio's public policy of encouraging settlement by rewarding insurers who resisted settlement, (2) relevant facts remain to be decided before the amount of any credit can be determined, and (3) Ohio law does not support the theory upon which defendants rely in ar-

guing that they are due a settlement credit.

■ The court finds that the combined limits of GenCorp's primary policies exceed GenCorp's own maximum estimates of its liability at the six sites. In opposing this motion GenCorp offers no evidence that those estimates are erroneous or uncertain. The court concludes, therefore, that the defendant excess insurers have no obligation to reimburse GenCorp for its losses due to environmental damage at the six sites and grants defendants' motion for summary judgment. The court does not reach the issue of whether Ohio law supports a theory of "settlement credits."[6]

## A. Whether granting settlement credits violates Ohio public policy favoring settlement

GenCorp argues that granting the excess insurers, who did not settle, credits for the settlements of the primary insurers would reward parties who refused settlement. This, GenCorp contends, is contrary to the Ohio public policy in favor of out-of-court settlement.[7]

GenCorp's argument is unpersuasive and, perhaps, itself steps on public policy. By GenCorp's logic, all defendants who do not settle should be penalized for their reluctance regardless of the merits of their claims. As defendants note, Ohio law *encourages* settlement; it does not *require* it. Defendants' Reply Memorandum of Law ("Reply"; Docket # 110), p. 1. Nothing in the cases cited by GenCorp supports the proposition that a party with meritorious or even arguable claims should be penalized for failing to compromise its position rather than take those claims to trial.

As GenCorp concedes, Ohio has not yet decided whether excess insurers who have not settled are entitled to a settlement credit as a result of the settlements of primary insurers. GenCorp cites three cases in support of its contention that other jurisdictions withhold settlement credits from parties who have resisted settlement: *Insurance Co. of N. Am. v. Kayser–Roth Corp.*, 770 A.2d 403 (R.I.2001); *E.R. Squibb & Sons v. Accident & Cas. Ins. Co.* ("*E.R. Squib I*"), 1997 WL 251548 (S.D.N.Y. May 13, 1997), on appeal as *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.* ("*E.R. Squib II*"), 241 F.3d 154 (2d Cir. 2001); and *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 15 P.3d 115 (2000). This court is not convinced by these cases.

· As defendants note, the circumstances of the settlement in *Kayser–Roth* differ considerably from the circumstances of the instant case in several respects. *See* Reply at 13–16. Most important for purposes

---

**6.** This might be seen as a matter of semantics. "Settlement credits" is a term of art, referring to an amount by which an excess insurer's liability is reduced when the underlying insurer settles with the insured. In the instant case, the court finds that the excess insurers' liability has not been triggered. The court prefers to express the matter in those terms rather than in terms of "settlement credits," an expression which unnecessarily imports into Ohio law a term of art from the law of other states.

**7.** While the court agrees that Ohio public policy favors settlement, the cases which GenCorp cites for that proposition do not confirm it. Both *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979 (6th Cir.2003), and *In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 211 (S.D.Ohio 1997), note a *federal* policy in favor of settlement, not an Ohio policy. The third case, *Shallenberger v. Motorists Mut. Ins. Co.*, 167 Ohio St. 494, 505, 150 N.E.2d 295, 302 (1958), mentions an Ohio policy in favor of settlement only in dicta. Moreover, the facts of that case, involving a settlement in which fraud was alleged in securing the settlement, differ considerably from the facts alleged here.

of this case, the insurance company claiming settlement credit, First State, had been part of a *concurrent* attempt by many insurers to work out a settlement with plaintiff. The court found that First State did not negotiate in good faith and "hung back," waiting to see how much plaintiff would receive in settlement from the other insurers. In this way, First State hoped to reduce its liability at the expense of the parties who reached settlement agreements. As the appellate court later found, "Although a setoff may be applied in an appropriate case, this is not such a case." *Kayser–Roth,* 770 A.2d at 414. The court would not allow First State to receive a windfall in the form of a setoff at the expense of concurrently-negotiating parties who bargained in good faith and reached a settlement.

Here, the settling primary insurance companies did not bargain for a settlement concurrently with the non-settling excess insurance companies; there has been no suggestion of bad faith; and, as described below, allowing the excess insurers a settlement credit would not give those insurers a windfall. The appellate court denied a settlement credit to First State based on the peculiar facts of that case. Those facts are not present here.

*E.R. Squibb I & E.R. Squibb II* are even less helpful to GenCorp's case. As here, Squibb carried both primary and excess insurance against product liability, and it settled with its primary insurers. To determine the excess insurers' liability in that case, the district court, applying New York law, ascertained each insurer's liability by means of a *pro rata* allocation. The district court refused to credit the excess insurers with the full amount actually paid in settlement of each claim, which in some cases amounted to more than a primary insurer's *pro rata* share of the overall liability, and instead "treated the settling insurers' portions as satisfied by the settlements, regardless of the actual settlement amounts. The result was that, as regards the Excess Insurers, their obligations were exactly as if there had been no settlements." *Squibb II,* 241 F.3d at 172. In commenting on the possibility that Squibb may have recovered more by settlement than if it had not settled, the court observed:

> [W]hile Squibb may have gained from the settlements, it undoubtedly took the risk that the size of the settlements would be inadequate to cover the settling insurers' *pro rata* share. In such a case *Squibb* would have been left holding the bag.... Under the court's approach, the settling parties are the ones who took the risk of the settlement, and the non-settling parties are left precisely as they would have been had no settlement occurred. That hardly seems unfair.

*Id.* at 173 (citation omitted).

These cases do not support GenCorp's contention that excess insurers are not entitled to settlement credits. Under *Squibb I & Squibb II,* they *are* entitled to such credits. The cases stand for the proposition that the award of such credits should ensure that the excess insurers pay the same amounts that they would have paid had no settlement occurred and ensure that the settling parties bear the risks of the settlement. The cases do not resolve the issue of the amount of any credit which should be awarded to an excess insurer because the courts used the *pro rata* allocation method overturned by *Goodyear.*

GenCorp quotes *Squibb I* in support of its argument that granting settlement credits to non-settling insurers discourages settlement:

> The non-settling insurers ask the Court to reward them for not settling

the case and give them the benefit of monies paid by the settling defendants. A rule allocating such a windfall to non-settling insurers would encourage insurers to refuse to settle and force the case to trial, knowing that they will never be required to pay more than what they are legally obligated to pay and hoping that they can reap a windfall if settlements by other insurers prove to be in excess of their legal obligation. The courts should not encourage that type of "dog in the manger" approach to litigation.

*Squibb I*, 1997 WL 251548 at *3. But the "windfall" to which district court referred was the fact that some party would receive more than it would have received at trial because, under the peculiar facts of *Squibb*, some claims had settled for more than the *pro rata* share of liability later determined by the court. The question at issue was whether the excess insurers should receive that benefit (by reducing their liability in recognition of the *actual* amounts paid by the primary insurers) or whether Squibb should receive that benefit (by allowing Squibb to retain the amount paid by the primary insurers in excess of their *pro rata* share). The court gave the windfall to Squibb because it had borne the risk of the settlement.

In the instant case, there can be a windfall only if GenCorp is allowed to exhaust a single primary insurer's coverage and load the whole of the remainder of its liability on the excess insurers. In that way, Gen-Corp might receive more than it would have received at trial, and, as will be seen, it would receive its windfall at the expense of the excess insurers. Because the excess insurers will not receive a windfall by crediting them an amount equal to Gen-Corp's entire primary coverage, the caution quoted from *Squibb I* by GenCorp is inapplicable to the instant case.

Finally, *Weyerhaeuser* does not stand for the proposition that insurers who fail to settle are not entitled to settlement credits. In that case Commercial Union Insurance Co. ("CU") tried to show that the funds which Weyerhaeuser had received in settlement from other insurers were more than sufficient to pay all proven and covered damages. The trial court ruled that CU failed to show by a preponderance of the evidence that Weyerhaeuser has been made whole by the settlements. For this reason, the appellate court found that the trial court properly denied CU's request to offset settlements received from other insurers. The question of rewarding non-settling insurers arose only in the context of determining which party bore the burden of proving whether Weyerhaeuser would receive a double recovery if CU were not credited with the settlements received from other insurers:

As Weyerhaeuser correctly notes, the insurers that chose to settle in this case received far more than a simple release of liability at specific sites. Rather these companies also purchased certainty by avoiding the risks of an adverse trial outcome—not to mention forgoing the expenses associated with a lengthy trial and appeal. As the insurers "paid Weyerhaeuser for a release from an unquantifiable basket of risks and considerations," *Br. of Resp't/Cross–Appellant* at 23, we cannot say the settlements simply constituted payment for Weyerhaeuser's cleanup costs. Further, the rule articulated by [*Pederson's Fryer Farms, Inc. v. Transamerica Ins. Co.,* 83 Wash.App. 432, 922 P.2d 126 (1996) ] is supported by "Washington's strong public policy of encouraging settlements." *Seafirst Ctr. Ltd. P'ship v. Erickson,* 127 Wash.2d 355, 366, 898 P.2d 299 (1995). Were we to hold the *insured* bears the burden of proving it has

not received a double recovery, such a rule would encourage litigation and reward the nonsettling insurer for refusing to settle.

*Weyerhaeuser*, 142 Wash.2d at 673–74, 15 P.3d at 126. This issue and its resolution have no relevance to the facts of the instant case.

For the above reasons, the court finds that Ohio public policy would not bar granting settlement credits to non-settling insurers.[8]

**B. Whether relevant facts remain to be decided**

GenCorp contends that material questions of fact remain to be decided regarding the excess insurers' liability to GenCorp, thus precluding summary judgment on that issue. In particular, GenCorp asserts that

> there has been no determination that the insurers breached their contracts and no declaration that GenCorp is entitled to be indemnified for any liabilities relating to the six sites at issue in this case. Assuming GenCorp was entitled to indemnification from its insurers, the Court would still need to determine the amount of such indemnification. Clearly, determining settlement credits before the insurers' ultimate liability is established takes putting the cart before the horse to a new level.... The insurers' argument is also premature because the issue of the trigger period for continuous environmental contamination at the sites has yet to be determined. This issue undoubtedly has a profound effect on the defendants' settlement credit argument.... The insurers' argument also fails to consider the effect of the Court's May 20, 1997 ruling, whereby the Court dismissed a number of excess policies based upon an alleged retroactive exclu-

sion, which was added to two policies issued by Genco, GenCorp's first layer umbrella insurer. This decision virtually eliminated GenCorp's insurance coverage for pollution-related liabilities for the 1975 to 1978 and 1979 to 1982 policy periods.

Pl. opp. at 6.

Defendants reply that GenCorp has offered no evidence to contradict the relevant claims made by defendants, claims supported by reference to court findings and to GenCorp's pleadings and which view the facts in a light most favorable to GenCorp:

> [T]he Excess Insurers have assumed the worst-case scenarios for purposes of this Motion for Summary Judgment and GenCorp has not come forward with any controverting evidence. For purposes of this motion ..., the Excess Insurers assume that GenCorp is entitled to be indemnified for any liabilities relating to the six sites at issue. Further, the Excess Insurers have assumed GenCorp's allegations of damage are true. Finally, the Excess Insurers have assumed the narrowest of triggered years.

Reply at 10 (citation omitted). Defendants conclude that even after making all possible assumptions in GenCorp's favor regarding undetermined relevant facts, the defendants can have no liability to GenCorp. The court will examine each of the three issues on which GenCorp contends that material questions of fact remain to be decided regarding the excess insurers' liability to GenCorp.

**1. Whether the court must determine that the insurers must indemnify GenCorp and determine the amount of any such indemnification**

In deciding the motion for summary judgment pending before the court, the

---

**8.** This presumes, of course, that Ohio law permits the grant of "settlement credits." As discussed below, the court does not reach that question.

court must assume that GenCorp is entitled to indemnification if the lower limits of the excess insurers' policies are reached. The court also must assume that the amount of that indemnification is the maximum amount alleged by GenCorp and consistent with the facts so far established in discovery. If after making these assumptions the court finds that the defendants can have no liability to GenCorp because the policy thresholds cannot be reached, then the questions of whether the defendants are *actually* liable to GenCorp and the *actual* amount of any such liability are beside the point. To contend otherwise is to assert that one does not understand the nature of summary judgment, a finding that after viewing the facts in the light most favorable to the non-moving party, any possible set of facts supported by the evidence in the record would require judgment for the moving party. GenCorp's contention that the court must determine whether the defendants must indemnify GenCorp and the amount of such indemnification is without merit.

### 2. Whether the court must determine the trigger period for continuous environmental contamination at the sites

■ The points just made with regard to GenCorp's contention that the court must determine whether the defendants must indemnify GenCorp and the amount

of such indemnification apply equally well to GenCorp's assertion that the court must determine the trigger period for continuous [9] environmental contamination at the sites. The defendants have assumed those trigger periods which are most favorable to GenCorp and which are supported by the evidence in the record. The defendants derived those periods largely from the testimony of GenCorp's expert as cited by the court in GenCorp I. *See* Sept. Memo. at 8–9, 13–14. If the court assumes the validity of those trigger periods which are most favorable to GenCorp and then finds that defendants can have no liability to GenCorp because the policy thresholds cannot be reached, then the court need not determine the actual trigger period for environmental contamination at the six sites. GenCorp's argument to the contrary is without merit.

### 3. Whether the court must consider the effect of retroactive pollution exclusions in GenCorp's Genco policies

GenCorp argues that the defendants' motion does not acknowledge that the GenCorp I court found that retroactive exclusion clauses added to two policies issued by Genco, GenCorp's first layer umbrella insurer, virtually eliminated GenCorp's insurance coverage for pollution-related liabilities for the 1975 to 1978 and 1979 to 1982 policy periods. Defendants respond, "If GenCorp has settled an underlying pol-

---

9. In GenCorp I, GenCorp argued in favor of a continuous trigger with exposure as the initial triggering event. Such a trigger maximizes insurance coverage for the insured. *GenCorp, Inc. v. AIU Ins. Co.*, 104 F.Supp.2d 740, 745–46 (N.D.Ohio 2000). The court found that the continuous trigger with injury-in-fact as the initial triggering event was the appropriate theory if GenCorp could prove that the injury was continuous. *Id.* at 752. If GenCorp could not prove that the injury was continuous, then injury-in-fact would be the appropriate trigger. *See discussion, id.* at 749–50.

Judge Dowd presumed a continuous trigger in his Sept. Memo., based upon the testimony of GenCorp's expert and the lack of any evidence to the contrary. *See* Sept. Memo. at 11. In the instant case, defendants presume a continuous trigger based on rulings in GenCorp I. The burden for proving how liability under the various policies was triggered is on GenCorp, the plaintiff in this action. GenCorp sought a "continuous trigger" ruling from Judge Dowd and now must accept the consequence.

icy, the Excess Insurers are entitled to a credit of the limits of that underlying policy, regardless of whether that policy contained a pollution exclusion."

No party cites language from the contracts or cites law to support its argument regarding the effect of the addition of "retroactive exclusion clauses."[10] Having raised the argument to resist defendants' motion for summary judgment, the burden is on GenCorp to support that argument. GenCorp has not carried its burden. The court finds, therefore, that GenCorp's argument is not well-taken.

### C. Whether Ohio law allows settlement credits of the type claimed by defendants

GenCorp contends that the defendants' request that they receive credits for any settlement that GenCorp reached with its primary and excess insurers misinterprets this court's July Memo. and misinterprets the *Goodyear* decision and other relevant cases. Defendants reply that settlement credits of the type they request are consistent with the July Memo. and with *Goodyear* and other Ohio cases. Defendants also argue that not giving them settlement credits would violate the terms of their insurance policies with GenCorp.

■ This court's July Memo. reached certain conclusions regarding various insurers' liabilities to GenCorp: (1) GenCorp's settlements with its primary insurers extinguished all claims against those insurers related to the issues in dispute in GenCorp I; (2) GenCorp's settlements ex-

hausted GenCorp's primary insurance for purposes of making claims under its excess insurance; and (3) GenCorp's excess insurers have the same obligation to pay GenCorp's environmental-related liabilities as they would have had if GenCorp's primary insurers had paid GenCorp the maximum amount covered by GenCorp's primary insurance policies. These conclusions must be read in light of the holding in *Goodyear* to understand the conflict between the parties in the instant case. *Goodyear* held:

> [W]hen a continuous occurrence of environmental pollution triggers claims under multiple primary insurance policies, the insured is entitled to secure coverage from a single policy of its choice that covers "all sums" incurred as damages "during the policy period," subject to that policy's limit of coverage. In such an instance, the insurers bear the burden of obtaining contribution from other applicable primary insurance policies as they deem necessary.

*Goodyear*, 95 Ohio St.3d at 516, 769 N.E.2d at 841.

■ GenCorp believes that *Goodyear* allows it to allocate its liability during a particular policy period to a single primary policy, exceed the coverage provided by that policy without exhausting the coverage provided by other primary policies, and "rise up" to the coverage provided by the excess insurers. Although it is not clear from GenCorp's brief, GenCorp also seems to believe *Goodyear* allows GenCorp

---

**10.** The court notes, however, that of the three excess insurance policies in effect through most of the 1975 to 1982 period and at issue here, all required GenCorp to maintain the underlying policy without change during the currency of the excess insurance policy. GenCorp's failure to do so would seem to be a violation of the terms of the excess policies. *See* Prudential Reinsurance Company: Excess Liability Policy, Appendix B to Defendants' Memorandum in Support of Their Motion for Summary Judgment ("App. B"; Docket # 101), Exh. 1, p. 0002533; Lexington Insurance Company, Following Form—Excess Liability Policy, App. B., Exh 2, p. LEX 0512; and First State Insurance Company, Special Coverage Policy, App. B, Exh. 7, p. 3.

to allocate its liability during a particular policy period to the coverage provided in a single year by a single primary policy and "rise up" to the excess coverage without exhausting other primary coverage. In either case, GenCorp apparently believes that *Goodyear* then requires the excess insurers to indemnify GenCorp for the entirety of its remaining liability. These positions are not supported by *Goodyear*.

GenCorp's interpretation of *Goodyear* will necessarily bring it into conflict with one of the court's three conclusions in the July Memo. For instance, if GenCorp is allowed to reach its excess insurance coverage by allocating all its liability accrued during some policy period to just one primary policy, and if the excess insurers are required to indemnify GenCorp for the entirety of its remaining liability, the excess insurers will necessarily pay GenCorp more than their contracted-for share of GenCorp's liability. The excess insurers will be indemnifying GenCorp not only for their own contracted-for share of GenCorp's liability but also for the share of GenCorp's liability which would otherwise have been paid by GenCorp's other, unexhausted primary insurers. Similarly, if GenCorp is allowed to reach its excess insurance coverage by allocating all its liability accrued during some policy period to just one year of primary policy coverage, and if the excess insurers are required to indemnify GenCorp for the entirety of its remaining liability, the excess insurers again will pay GenCorp more than their contracted-for share of GenCorp's liability. The excess insurers will be indemnifying GenCorp for their own contracted-for share of GenCorp's liability and also for GenCorp's share of the liability otherwise covered by the primary coverage triggered in other years of the policy period.[11]

Had GenCorp not settled with the primary insurers, the above scenarios would not be problematic. Having indemnified GenCorp for more than their contracted-for share of GenCorp's liability, the excess insurers would then turn to the untapped primary insurers for contribution, as the *Goodyear* court presumed they would do. The excess insurers would "bear the burden of obtaining contribution from other applicable primary insurance policies as they deem necessary." *Id.*

But GenCorp's settlements eliminated this possibility. The settlements extinguished all claims related to the issues in dispute in GenCorp I against the primary insurers. The excess insurers, therefore, cannot seek contribution from GenCorp's primary insurers because those insurers have no remaining liability to GenCorp. The result of GenCorp's interpretation of *Goodyear*, then, would be to saddle the excess insurers with more than their contracted-for share of GenCorp's liability and give them no recourse for reducing their burden.

GenCorp reaches this problematic result because it overlooks a key piece of the puzzle: *GenCorp has already made its allocation of liability among its primary insurers.* GenCorp made that allocation when it settled with its primary insurers. GenCorp could have settled with just one or two of its primary insurers or sought a partial settlement with any of those insurers. GenCorp did not do this. Instead, GenCorp settled with all primary insurers and released them from any further liability. In so doing, GenCorp exhausted its primary coverage. It exhausted that coverage as to all primary insurers, as to all primary insurance policies, and as to all policy years. It is not possible for GenCorp now to decide to allocate its liability to one policy or to one policy year because

---

11. Again, this presumes a continuous trigger of liability.

this would be contrary to the settlements it has reached.

 Thus, the court does not reach the question of whether Ohio law permits "settlement credits" because it does not need to do so. In settling fully with its primary insurers, GenCorp allocated the liability it accrued during any policy period as broadly as possible among all primary policies in effect during that period. The excess insurers have liability, therefore, only if, after distributing liability as broadly as possible during any primary policy period, the payment limits of any primary policy are exceeded. The defendant excess insurers point to the primary policies covering the six sites at issue during the relevant periods and to the estimated, worst-case liabilities which GenCorp accrued at those sites as the result of the dumping and of the spread of waste material. Even presuming those trigger periods most favorable to GenCorp given the evidence in the record, GenCorp's liabilities at the six sites will not exceed the limits of its primary policy coverage during any policy period. GenCorp offers no evidence that the defendants' erred in their estimates of the extent of GenCorp's primary coverage, in their estimates of GenCorp's potential liability at the six sites, or in their estimates of the trigger periods most favorable to GenCorp. GenCorp has failed, therefore, to offer even a scintilla of the evidence it must offer to resist defendants' motion for summary judgment. As a result, there is insufficient evidence to allow a reasonable jury to find for GenCorp on any issue of material fact.

### IV

The court grants First State's motion for joinder. For the reasons given above the court also grants defendants' motion for summary judgment and enters judgment for the defendants as a matter of law.

**IT IS SO ORDERED.**